UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EARTHA GRANT                                              CIVIL ACTION

VERSUS                                                    NO. 10-3161

HOUSE OF BLUES NEW ORLEANS                                SECTION "K" (2)
RESTAURANT CORPORATION

### ORDER AND REASONS ON MOTION

Plaintiff, Eartha Grant, sued her former employer, House of Blues New Orleans Restaurant Corporation ("House of Blues"), alleging race and gender discrimination and constructive discharge during her employment, all in violation of Title VII, 42 U.S.C. § 2000e et seq. Complaint, Record Doc. No. 1. House of Blues filed a Motion to Dismiss or Stay Proceedings and Compel Arbitration, arguing that Grant had agreed to submit any employment-related dispute to binding arbitration. Record Doc. No. 15. House of Blues received leave to supplement its motion with additional exhibits. Record Doc. Nos. 20, 22.

Grant filed a timely opposition memorandum, supported by her own affidavit. Record Doc. No. 36. House of Blues received leave to file a reply memorandum. Record Doc. Nos. 37, 38, 39. In its reply memorandum, defendant pointed out that plaintiff's affidavit, Record Doc. No. 36-1, did not contain the handwritten signatures of Grant and

the notary public who notarized the affidavit, but contains only the typed notations on the signature lines of "/s/ Eartha Grant" and "/s/ John O. Pieksen, Jr."  Thus, by order dated April 13, 2011, I required plaintiff to submit a properly signed and notarized affidavit into the record.  Record Doc. No. 40.  Plaintiff has done so.  Record Doc. No. 41.  Therefore, I have considered her affidavit.

This matter was referred to the undersigned magistrate judge for all proceedings and entry of judgment in accordance with 28 U.S.C. § 636(c) upon written consent of all parties.  Record Doc. No. 32.

I.  APPLICABLE PROVISIONS OF THE FEDERAL ARBITRATION ACT

House of Blues bases its Motion to Dismiss or Stay Proceedings and Compel Arbitration on Section 3 of the Federal Arbitration Act ("the Act"), which provides that

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an <u>agreement in writing</u> for such arbitration, the court in which such suit is pending, <u>upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement</u>, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

Section 2 of the Act

makes written arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a

> contract." That provision creates substantive federal law regarding the enforceability of arbitration agreements, requiring courts "to place such agreements upon the same footing as other contracts." Section 3, in turn, allows litigants already in federal court to invoke agreements made enforceable by § 2. That provision requires the court, "on application of one of the parties," to stay the action if it involves an "issue referable to arbitration under an agreement in writing."

Arthur Andersen LLP v. Carlisle, 129 S. Ct. 1896, 1901-02 (2009) (quoting 9 U.S.C. §§ 2, 3; Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 478 (1989)) (footnote omitted).

Thus, "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes–but only those disputes–that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) (citations omitted); see also id. at 945 ("Arbitration Act's basic purpose is to ensure judicial enforcement of privately made agreements to arbitrate") (quotation omitted).

"The [Act] does not require arbitration unless the parties to a dispute have agreed to refer it to arbitration. Likewise, the mandatory stay provision of the [Act] does not apply to those who are not contractually bound by the arbitration agreement." Todd v. S.S. Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F.3d 329, 334 (5th Cir. 2010) (quotation omitted). "[A] party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute." First Options, 514 U.S. at 942.

Section 3 of the Act permits a party to file a motion to stay an action, while Section 206 provides that the court may compel arbitration. <u>See</u> 9 U.S.C. § 206 ("A court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States.").

## II.   STANDARDS OF REVIEW

Federal Rule of Civil Procedure 81(a)(6)(B) provides that "[t]hese rules, to the extent applicable, govern proceedings under the following laws, except as these laws provide other procedures: . . . (B) 9 U.S.C., relating to arbitration . . ." Fed. R. Civ. P. 81(a)(6)(B). Neither Section 2 nor Section 3 of the Act provides procedural standards of review for a motion to dismiss or stay pending arbitration. The parties in their motion papers have not addressed the procedural standard that this court should apply in reviewing defendant's Motion to Dismiss or Stay Proceedings and Compel Arbitration. My research has not located any Fifth Circuit case that discusses the appropriate standard. <u>See</u> <u>Rain CII Carbon LLC v. ConocoPhillips Co.</u>, No. 09-4169, 2010 WL 148292, at *3 (E.D. La. Jan. 11, 2010) (Berrigan, J.) ("As both parties acknowledge, the 5th Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration.").

Although House of Blues partially styles its motion as a "motion to dismiss," defendant does not cite Fed. R. Civ. P. 12(b) as the basis for its motion. Arbitrability is not listed as one of the defenses that can be presented through a motion to dismiss under Rule 12(b). When a district court has denied a motion to stay brought under Section 3 of the Act, "nothing prevents that party from then filing a Rule 12 motion to dismiss." Conrad v. Phone Directories Co., 585 F.3d 1376, 1383 n.2 (10th Cir. 2009) (citing Fed. R. Civ. P. 12(g)(2), 12(h)(1); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1386 (3d ed. 2004)); compare Bombardier Corp. v. Nat'l R.R. Passenger Corp., 333 F.3d 250, 252, 253 (D.C. Cir. 2003) (Defendant's motion to dismiss plaintiff's "claim pursuant to Rule 12(b)(6), on the grounds that [plaintiff] had not exhausted the contract's dispute resolution procedures," without arguing expressly that the contract contained an arbitration clause enforceable under the Act, "was neither a motion to compel arbitration under 9 U.S.C. § 4 nor a motion to stay arbitration under 9 U.S.C. § 3.").

In the instant case, House of Blues does not mention Rule 12(b) as a basis for its requested dismissal of this action and "it is plainly apparent from the four corners of the motion that the movant seeks only the relief provided for in the [Act], rather than any other judicially-provided remedy." Conrad, 585 F.3d at 1385; see also Fit Tech, Inc. v. Bally Total Fitness Holding Corp., 374 F.3d 1, 6 (1st Cir. 2004) (defendant "clearly is

invoking the [arbitration] remedy, even if a stay rather than dismissal ensues"). Thus, the Rule 12(b) standard of review does not apply to defendant's instant motion, despite its partial style as a "motion to dismiss."

Courts in other circuits "use a summary judgment standard, compelling arbitration only where there is 'no genuine issue of fact concerning the formation of the agreement' to arbitrate." Prevost v. Islands Mech. Contractor, Inc., No. 08-cv-00110, 2010 WL 2772662, at *2 (D.V.I. July 13, 2010) (quoting Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 159 (3d Cir. 2009)) (internal quotation omitted); accord Rain CII Carbon LLC, 2010 WL 148292, at *3 (citing Clutts v. Dillard's, Inc., 484 F. Supp. 2d 1222, 1224 (D. Kan. 2007)).

The courts that use the summary judgment standard of Fed. R. Civ. P. 56 have found it appropriate "because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." Century Indem. Co. v. Certain Underwriters at Lloyd's, 584 F.3d 513, 528, 532 (3rd Cir. 2009) (quotation omitted); accord Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc., 531 F.3d 863, 865 (D.C. Cir. 2008); Magnolia Capital Advisors, Inc. v. Bear Stearns & Co., 272 F. App'x 782, 785-86 (11th Cir. 2008); Bensadoun v. Jobe-Riat, 316 F.3d 171, 175 (2d Cir. 2003); Tinder v. Pinkerton Sec., 305 F.3d 728, 735 (7th Cir. 2002); see also Gibson v. Wal–Mart Stores, Inc., 181 F.3d 1163,

1166 (10th Cir. 1999) (reviewing district court's grant of motion to compel arbitration under summary judgment standard when parties agreed that the standard applied); cf. Prescott Architects, Inc. v. Lexington Ins. Co., 638 F. Supp. 2d 1317, 1324 n.14 (N.D. Fla. 2009) (stating that Eleventh Circuit has not adopted summary judgment standard for motions to compel arbitration); Clutts, 484 F. Supp. 2d at 1224 ("Although the Tenth Circuit has not precisely addressed this issue, there is no reason to believe that it would apply a different legal standard.") (citing Gibson, 181 F.3d at 1166; Avedon Eng'g, Inc. v. Seatex, 126 F.3d 1279, 1283 (10th Cir. 1997)).

Under the summary judgment standard, the "party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made. . . . This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (citations omitted).

Both parties in the instant case have submitted sworn exhibits in support of their arguments, consisting of evidentiary materials outside the four corners of their pleadings. The motion concerns an affirmative defense. Fed. R. Civ. P. 8(c)(1). Thus, based on the authorities cited above, I will apply the Fed. R. Civ. P. 56 standard for summary judgment motions to the parties' submissions.

### III.  SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56 was revised to "take effect on December 1, 2010, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending."  Order of the Supreme Court of the United States (Apr. 28, 2010), www.supremecourt.gov/orders/courtorders/frcv10.pdf.  Because "the standard for granting summary judgment remains unchanged" by the revision, Federal Civil Judicial Procedure and Rules, 2010 Amendments Advisory Committee Notes, at 265 (West 2010 rev. ed. pamph.) (hereafter "Advisory Committee Notes"), I find it just and practicable to apply the revised Rule 56 in this proceeding.

Revised Rule 56 establishes new procedures for supporting factual positions:

(1)  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Thus, the moving party bears the initial burden of identifying those materials in the record that it believes demonstrate the absence of a genuinely disputed material fact, but it is not required to negate elements of the nonmoving party's case. Capitol Indem. Corp. v. U.S., 452 F.3d 428, 430 (5th Cir. 2006) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "[A] party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to [a particular material] fact." Advisory Committee Notes, at 265.

A fact is "material" if its resolution in favor of one party might affect the outcome of the action under governing law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). No genuine dispute of material fact exists if a rational trier of fact could not find

for the nonmoving party based on the evidence presented.  <u>Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.</u>, 40 F.3d 698, 712 (5th Cir. 1994).

To withstand a properly supported motion, the nonmoving party who bears the burden of proof at trial must cite to particular evidence in the record to support the essential elements of its claim.  <u>Id.</u> (citing <u>Celotex</u>, 477 U.S. at 321-23).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 323; <u>accord</u> <u>Capitol Indem. Corp.</u>, 452 F.3d at 430.

IV.   <u>GENUINE DISPUTE OF MATERIAL FACT</u>

Defendant's motion to stay these proceedings and compel arbitration requires the court to determine first whether Grant and House of Blues entered into a binding, valid arbitration agreement.  <u>Washington Mut. Fin. Group, LLC v. Bailey</u>, 364 F.3d 260, 263 (5th Cir. 2004).

> That first step itself contains two questions:  (1) is there a valid agreement to arbitrate the claims and (2) does the dispute in question fall within the scope of that arbitration agreement.  We apply the federal policy favoring arbitration when addressing ambiguities regarding whether a question falls within an arbitration agreement's scope, but we do not apply this policy when determining whether a valid agreement exists.

<u>Sherer v. Green Tree Servicing LLC</u>, 548 F.3d 379, 381 (5th Cir. 2008) (citations omitted).  When deciding whether the parties agreed to arbitrate a dispute, "courts

generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options, 514 U.S. at 944; Washington Mut. Fin. Group, 364 F.3d at 264. The parties in the instant case agree that this determination is governed by Louisiana state law.

Under Louisiana law, a contract is formed by the consent of all parties established through an offer and acceptance. The parties must freely give their mutual consent to the contract. "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." La. Civ. Code art. 1927. No contract exists unless these requirements have been met. Ingraffia v. NME Hosps., Inc., 943 F.2d 561, 565 (5th Cir. 1991) (citing La. Civ. Code Ann. arts. 1918, 1927, 1966, 1971, 2029 cmt. b; Higgins v. Spencer, 531 So. 2d 768, 770 (La. App. 1st Cir. 1988); Thebner v. Xerox Corp., 480 So. 2d 454, 457 (La. App. 3d Cir. 1985)); Atel Maritime Investors, LP v. Sea Mar Mgmt., L.L.C., No. 08-1700, 2010 WL 1978261, at *2 (E.D. La. 2010) (Africk, J.) (citing Ingraffia, 943 F.2d at 565); Alexander v. Lafayette Crime Stoppers, Inc., 28 So. 3d 1253, 1255-56 (La. App. 3d Cir.), writ denied, 38 So. 3d 282 (La. 2010).

House of Blues bears the evidentiary burden to establish that a contract was formed and the terms of that contract. Apache Corp. v. W & T Offshore, Inc., 626 F.3d 789, 798 (5th Cir. 2010) (citing La. Civ. Code art. 1831, Suire v. Lafayette City-Parish

11

Consol. Gov't, 907 So.2d 37, 58 (La. 2005)). On the current record, defendant's evidence fails to establish as an undisputed matter for purposes of this motion the existence of a written arbitration agreement between the parties or the full terms of any such contract, if one existed.

House of Blues has submitted declarations under penalty of perjury from its employees Katherine Griffin, Kari Morehead, Michael Grozier and Janice Ide. The declarations and the documents attached thereto establish only that it was defendant's general practice to enter into arbitration agreements with its employees. Record Doc. Nos. 15-2, 15-3, 20-2. However, Grant denies in her affidavit that she was ever presented with a written arbitration agreement or was ever told, orally or in writing, either when she began her employment with House of Blues in 1999 or when she was promoted in 2004, that her continued employment meant that she would have to go to arbitration if she had an employment dispute with defendant. Record Doc. No. 41 at ¶¶ 3-5.

House of Blues has <u>not</u> submitted in evidence a <u>complete</u> arbitration agreement <u>signed</u> by Grant. Defendant has provided a single page that is the apparent last page of a contract, which plaintiff purportedly signed on July 21, 1999. This page contains the signature lines and paragraphs numbered six through nine of an admittedly longer document. Exh. A to Defendant's Exh. 4, Griffin's second declaration, Record Doc.

No. 20-2 at p. 3 of 18; Exh. A to Defendant's Exh. 5, Grozier's declaration, Record Doc. No. 20-2 at p. 6 of 18.  This single page attributable to Grant says nothing about arbitration.  House of Blues also submitted a one-page, four-paragraph, Receipt of Handbook & Acknowledgment form that Grant purportedly signed on July 21, 1999, which contains the sentence: "In the event that I am dissatisfied with any action taken by [House of Blues], I agree to submit the matter to final and binding arbitration and will not initiate a lawsuit." Exh. B to Defendant's Exh. 1, Griffin's first declaration, Record Doc. No. 15-2 at p. 6 of 6.

Defendant argues that these documents evidence the existence of an arbitration agreement in 1999.  However, Grant swears under oath that she has "absolutely no memory of signing" any of those documents and she "question[s] the authenticity of the signatures on those Exhibits." Plaintiff's affidavit, Record Doc. No. 41 at ¶ 6.  This fact dispute precludes a finding on the current evidentiary record that Grant entered into an arbitration agreement in July 1999.

Furthermore, the typeface and word and line spacing on the single page of the incomplete agreement that Grant supposedly signed in 1999 differ from the font and spacing of the complete arbitration agreement attached to Grozier's and Ide's declarations, which defendant contends is an identical exemplar of the contract that Grant signed (with the exception that the exemplar is datelined West Hollywood, California,

while Grant's signature page was datelined New Orleans, Louisiana).  Exh. B to Defendant's Exh. 5, Grozier's declaration, Record Doc. No. 20-2 at pp. 7-11 of 18; Exh. A-1 to Defendant's Exh. 6, Ide's declaration, Record Doc. No. 20-2 at pp. 14-18 of 18. These documents are insufficient to establish the complete terms of any contract to arbitrate between plaintiff and House of Blues in the absence of adequate proof that Grant actually signed any contract containing an arbitration clause.

Even if Grant signed an arbitration agreement in 1999, House of Blues contends that she entered into a new, different contract[1] when she was promoted in 2004.  While admitting that it has not found any arbitration agreement that was signed in 2004, defendant has submitted an exemplar of the agreement that it had a policy of using with its employees in 2004.  By its own terms, this contract, if Grant agreed to it, superseded any prior agreement.  See Paragraph 13 of Exh. A to Defendant's Exh. 2, Morehead's declaration, Record Doc. No. 15-3 at p. 7 of 8.

In the absence of a written arbitration agreement signed by plaintiff in 2004, House of Blues argues that her conduct in accepting the promotion and continuing to work established her consent to the agreement.  Defendant contends that Grant had notice

---

[1]House of Blues contends in its reply memorandum that the 2004 version "was substantially similar" to the 1999 version.  Record Doc. No. 39 at p. 2.  For purposes of the pending motion, the court need not ascertain the differences between the two contracts, neither of which defendant has proven to be in effect between the parties.

14

of the written arbitration agreement via the letter that offered her a promotion, which she signed and accepted. See letter dated August 13, 2004, Exh. A to Defendant's Exh. 1, Griffin's original declaration, Record Doc. No. 15-2 at p. 4 of 6 ("This offer of employment is contingent upon . . . your reviewing and accepting . . . the Arbitration Agreement we require as a condition of employment. We provide copies of the . . . Arbitration Agreement upon commencement of employment . . . ."). I cannot find on the current evidentiary record that plaintiff's conduct in accepting the promotion in 2004 and continuing her employment with House of Blues is clearly indicative of consent under the circumstances to a detailed, seven-page arbitration agreement that she avers she never saw.

Given the gaps and inconsistencies in the evidence submitted by defendant and the affirmative declarations in plaintiff's affidavit, I find that House of Blues has not satisfied its burden at this time to prove that the parties entered into a binding written agreement to arbitrate the instant dispute. Therefore, I am not currently satisfied that the issues involved in this lawsuit or proceeding are referable to arbitration under any such agreement. 9 U.S.C. § 3; see McManigal v. Medicis Pharm. Corp., No. C07-4874, 2008 WL 618909, at *3 (N.D. Cal. Mar. 3, 2008) (denying motion to compel arbitration and rejecting defendant's contention that plaintiff had accepted arbitration agreement by accepting other agreements, when plaintiff denied ever having seen arbitration

15

agreement). Accordingly, defendant's Motion to Dismiss or Stay Proceedings and Compel Arbitration is DENIED.

The existence of an arbitration agreement is an affirmative defense that House of Blues may assert in its answer in this matter. Fed. R. Civ. P. 8(c)((1). The factual dispute concerning the existence of any arbitration agreement must be resolved on a more complete evidentiary record, possibly including a trial at which the factfinder can determine the credibility of the witnesses and determine at that time whether this dispute must be referred to arbitration.

New Orleans, Louisiana, this __27th__ day of April, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE